UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
M.V.B. COLLISION INC. d/b/a MID
ISLAND COLLISION,

                Plaintiff,

      v.                                          2:23-cv-00221-OEM-ST

PROGRESSIVE INSURANCE COMPANY,

                Defendant.
----------------------------------------------------------x

## MEMORANDUM AND ORDER

ORELIA E. MERCHANT, United States District Judge:

Plaintiff M.V.B. Collision Inc. ("Plaintiff") filed suit against defendant Progressive Insurance Company ("Defendant" or "Progressive") in the Supreme Court of the State of New York, County of Nassau, on December 5, 2022. *See* Summons and Complaint, ECF 1-1 ("Compl.") at 1. On January 12, 2023, Defendant removed this action to the Eastern District of New York. Notice of Removal, ECF 1 ("Notice") at 1. Defendant alleges that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). *Id*. at 2. Before the Court is Defendant's Motion to Dismiss ("Motion"), ECF 14, filed on July 24, 2023. For the reasons set forth below, Defendant's motion is granted in part, with respect those claims barred by res judicata, and denied in part, with respect to remaining claims, for lack of Article III standing; this action is partially dismissed, with respect to those claims adjudicated in a prior action, and the remaining claims are remanded to state court pursuant to 28 U.S.C. § 1447(c).

## BACKGROUND[1]

Plaintiff, a citizen of New York, is an autobody repair shop located in Nassau County, New York engaged in the business of repairing motor vehicles. Compl. at 1. Defendant, a citizen of Ohio, is a New York State licensed insurance company that underwrites automobile insurance policies within the State of New York. *Id*. at 2. Defendant's insurance contracts obligate it to pay the claims of insureds and other vehicle owners damaged by insureds, repairing the damaged vehicles to their pre-accident conditions. *Id*.

In the Complaint, Plaintiff challenges Defendant's practice of "photo-estimating," "which purports to estimate the cost of repairing damage to motor vehicles solely by viewing photographs submitted to it by its insureds or third-party claimants." *Id*. at 3. Plaintiff alleges that this practice gives rise to claims pursuant to N.Y. Gen. Bus. Law § 349(h), which prohibits deceptive acts and practices, and N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7 (2000), which governs unfair claims settlement practices. Compl. at 6-10.

Plaintiff alleges that "the photo-estimating procedure was instituted with the express knowledge that a significant number of insureds or claimants will accept the payment without ever having the vehicle inspected by a professional repair facility, and in fact many cases will never have the vehicle repaired." *Id*. Plaintiff alleges that "dating back to 2019," Defendant has used "television advertisements and other means" to "entice [customers] to utilize its photo-estimating program at such time as they call to report their claims." *Id*.

Plaintiff describes that Defendant's photo-estimate service is a "deception," given that "photographs […] cannot, and do not, account for safety and liability considerations" and "never show full damage." *Id*. at 4. Plaintiff alleges that "for a unibody vehicle to be properly evaluated

---

[1] The following facts are taken from the Complaint and are assumed to be true for the purposes of this memorandum and order, unless otherwise indicated.

2

the vehicle must be set-up and measured at a professional repair autobody facility in order to determine the extent of unibody damage." *Id*. at 5. Plaintiff further alleges that Defendant's photo-estimate service "mislead[s] its insureds and claimants to believe that their vehicles could be repaired for the amount offered, when they were aware this was not true." *Id*. at 9.

Plaintiff's sole allegation of injury to itself is that "[D]efendant instituted the foregoing procedure with the knowledge that a substantial number of insureds and third-party claimants will be deceived into accepting the defendant's payments and never having their vehicles repaired to its pre-loss condition, thereby saving the defendant millions of dollars and depriving the plaintiff of the opportunity to repair certain vehicles." *Id*. at 5. Plaintiffs seek damages "in excess of fifty-million dollars […] with the exact amount to be determined at trial." *Id*. at 11.

## STANDARD OF REVIEW

Defendant moves to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6). "The standards of review under Rules 12(b)(1) and 12(b)(6) are 'substantively identical.'" *Baskerville v. Admin. for Children's Servs.*, No. 19-CV-00602 (AMD)(LB), 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

Generally, to withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. With respect to claims alleging fraud, however, Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Rule 12(b)(1) is governed by a substantively identical standard. "The only 'substantive difference' between the standards of review is that under Rule 12(b)(1), 'the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas' under Rule 12(b)(6), 'the movant bears the burden of proof on a motion to dismiss[.]'" *Baskerville v. Admin. for Children's Servs.*, No. 19CV00602AMDLB, 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020) (quoting *Seeman v. U.S. Postal Serv.*, No. 2:11-CV-206, 2012 1999847, at *1 (D. Vt. June 4, 2012)).

## DISCUSSION

### A. Res Judicata

Defendant's first argument for dismissal is that Plaintiff's complaint is barred by the doctrine of res judicata. Defendant notes that Plaintiff filed a nearly identical complaint against Defendant on August 31, 2021. Defendant's Motion to Dismiss, ECF 14-1 ("Motion") at 2 (citing *M.V.B. Collision Inc. dba Mid Island Collision v. Progressive Insurance Company*, No. 2:21-cv-04899-GRB-ARL (E.D.N.Y. Aug. 31, 2021) ("*Mid Island I*")). Plaintiff voluntarily dismissed *Mid Island I* with prejudice on November 29, 2022, which the Court so ordered the same day. *See Mid Island I,* Notice of Voluntary Dismissal (Nov. 30, 2022), ECF 11; *Mid Island I,* Order Dismissing Case (Nov. 30, 2022).

"Under the doctrine of res judicata, or claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 400 F.3d 139, 141 (2d Cir. 2005) (cleaned up). "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986).

4

Plaintiff's claims in this action are substantively identical to those in *Mid Island I*. Plaintiff's first cause of action in both cases is violation of New York General Business Law § 349, and Plaintiff's second cause of action in both cases is for unfair claims settlement practices pursuant to N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7 (2000). Compl. at 6-11; *Mid Island I* Compl. at 9-14. Even the phrasing of these causes of action is nearly identical in both complaints. *Id.*

Because *Mid Island I* was dismissed with prejudice and involved Plaintiff and Defendant, Plaintiff cannot pursue in this action the re-litigation of any claims that were or could have been raised in *Mid Island I*. *See Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'")[2]; *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 418 (E.D.N.Y. 2021) ("A defendant moving to dismiss an action on the basis of claim preclusion must show '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action.'") (quoting *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015)).

The doctrine of res judicata does not, however, bar Plaintiff from pursuing claims arising after the filing of the complaint in *Mid Island I*. "[A] claim 'arising subsequent to a prior action . . .

---

[2] In this action, the New York State law governing issues of res judicata controls. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) ("The law governing the doctrine of *res judicata* in a diversity action is the law that would be applied by state courts in the State in which the federal diversity court sits."). However, the outcome in this case would be the same under both New York and federal law. *See, e.g., Maharaj*, 128 F.3d at 97.

5

[is] not barred by *res judicata*' even if the new claim is 'premised on facts representing a continuance of the same 'course of conduct.'"" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003)). "This is because, as the Supreme Court has directed: 'That both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct . . . may frequently give rise to more than a single cause of action. . . . While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *Id*. (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955)). "[R]es judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016), *as revised* (June 27, 2016), *and abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

Plaintiff's first and second causes of action are both based on a course of conduct that began "on [sic] the years leading up to 2019" and continued at least through the date that Plaintiff filed its complaint on December 5, 2022. Compl. at 6-11. Plaintiff's factual allegations, which are mostly undated, suggest for the most part that the conduct underlying Plaintiff's first and second causes of action continued without interruption throughout this period. *See, e.g.*, Compl. at 7 ("[D]efendant did and continues to issue appraisals that undervalue the cost of necessary repairs to vehicles."). Because Plaintiff alleges conduct giving rise to its first and second causes of action that post-dates the filing of the *Mid Island I* complaint on August 31, 2021, res judicata does not bar either of these claims in their entirety. However, Plaintiff's first and second causes of action are partially barred by the doctrine of res judicata to the extent that they concern events occurring prior to August 31, 2021.

6

B.  Article III Standing

Defendant removed this action from state court pursuant to 28 U.S.C. § 1332(a)(1), which grants this Court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between […] citizens of different States[.]"  Given that Plaintiff is a citizen of New York, Defendant is a citizen of Ohio, and the matter in controversy exceeds the sum of $75,000, the requirements of 28 U.S.C. § 1332(a)(1) have been met here.  But more than adherence to this statute is required for this Court to have jurisdiction over Plaintiff's claims: Plaintiff must also have Article III standing.  Because this action was removed to this Court from state court, this action must be remanded if this Court lacks Article III standing.  28 U.S. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

The Constitution only empowers federal courts to adjudicate "cases" and "controversies."  U.S. Const. Art. III, § 2.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "[T]he 'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id*. (internal citations omitted).  "An injury in fact must be concrete," in that it is "real, and not abstract."  *Id*. at 340 (internal quotation marks omitted).

In *TransUnion LLC v. Ramirez*, the Supreme Court held that the violation of a statute, without an associated concrete injury by the plaintiff, was merely "an injury in law" and "not an injury in fact" as required under Article III.  141 S. Ct. 2190, 2205 (2021).  "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private

7

defendant over that violation in federal court." *Id*. at 2205 (emphasis in original). "No concrete harm, no standing." *Id*. at 2200.

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id*. "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998)). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve," even where a plaintiff alleges a statutory violation. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Defendant argues that Plaintiff's alleged injuries are not sufficiently traceable to Defendant's actions to give rise to Article III standing. The Court agrees.

"The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.' Such a nexus is most easily shown if there is a direct relationship between the plaintiff and the defendant with respect to the conduct at issue. However, while the 'indirectness' of an injury 'may make it substantially more difficult' to show the 'fairly traceable' element of Article III standing, *i.e.,* 'to establish that, in fact, the asserted injury was the consequence of the defendants' actions,' indirectness is 'not necessarily fatal to standing' because the "fairly traceable" standard is lower than that of proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir. 2013) (cleaned up).

"While a causation chain for purposes of Article III standing does not fail simply because it has several links, those links cannot be 'hypothetical or tenuous' and must 'remain plausible' […] What matters is not the 'length of the chain of causation,' but rather the 'plausibility of the

8

links that comprise the chain.'" *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020). Such a "line of causation" must not be "attenuated," and must be supported by more than "hypothetical, conclusory, and implausible assertions." *Id*.

To establish Article III traceability, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Though "a defendant's challenged actions" need not be "the very last step in a chain of events leading to an alleged injury," a plaintiff must "plead facts indicating that a defendant's actions had a determinative or coercive effect upon the action of someone else who directly caused the alleged injury." *Nat'l Council of La Ram v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008).

Here, Plaintiff has failed to plead an adequate line of causation between its alleged injury and Defendant's actions. The direct cause of Plaintiff's alleged harm is consumer behavior: Plaintiff alleges that it has lost business due to consumers opting to not repair their vehicles after receiving a payment via Defendant's photo-estimating service. Therefore, to establish an Article III injury, Plaintiff must "plead facts indicating that [Progressive's] actions had a determinative or coercive effect" upon these consumers' choices. Plaintiff has failed to do so.

Plaintiff identifies two forms of alleged deception on the part of Defendant. First, Plaintiff challenges "[Progressive's] misrepresentations that photo-estimating was a competent, professional, and well recognized method of estimating the actual cost of repairs to motor vehicles that sustained damages when such was not the case." Compl. at 4. Second, Plaintiff suggests that

9

Progressive's photo-estimating service "operates to mislead its insureds and third-party claimants into believing that there is no need to have their vehicles properly repaired." *Id*.

Plaintiff does not identify a single allegedly misleading or deceptive statement nor a single customer who was allegedly misled, and Plaintiff's general allusions to misrepresentations made by Defendant concern events that took place prior to August 31, 2021, and are therefore barred by the doctrine of res judicata. *See* Compl. at 6 ("*[O]n [sic] the years leading up to 2019*, the defendant, through its agents, employees, servants, and independent contractors made misrepresentations or omissions which were likely to mislead and deceive a reasonable consumer.") (emphasis added). In the absence of an adequately pleaded, non-time-barred misrepresentation, Plaintiff seems to rely on the suggestion that the act of offering or advertising a photo-estimating service is inherently deceptive.

It is not clear to the Court how the act of offering an initial repair estimate via a photo-estimate could bear a "determinative or coercive effect" on consumers' alleged choice to forego repairs. Plaintiff does not make any specific factual allegations supporting this claim, instead vaguely alleging that "reliance upon photo estimates, which never show full damage, […] operates to mislead [Progressive's] insureds and third party claimants into believing that there is no need to have their vehicles properly repaired […] creating the false sense that their vehicles were safe to drive." Compl. at 4. But these conclusory allegations do not support the inference that an initial repair estimate, given for the express purpose of facilitating future repairs, would have the "determinate or coercive effect" of compelling Plaintiff's would-be customers to forego repairs.

Without more than vague and conclusory allusions to deception, Plaintiff does not sufficiently allege that its alleged injuries are traceable to Defendant's conduct. *Cf Mid Island I* Mem & Order (Feb. 20, 2020) (finding Plaintiff had alleged deceptive acts through broad

10

allegations "combined with specific examples of drastic under-evaluations from the photo-estimates"); *Salon FAD v. L'Oreal USA, Inc.*, No. 10 CIV 5063 DLC, 2011 WL 70591, at *3–4 (S.D.N.Y. Jan. 10, 2011) (Finding that "[a]lthough it is the consumer's decision that ultimately causes injury to the plaintiffs, the defendants' false statements have a 'determinative or coercive effect' on the consumer's decision" where Plaintiffs identified specific false statements directly driving consumer behavior, unlike a different case where "causation was too attenuated."); *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 724 (2013) ("The logical conclusion of this theory seems to be that a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful—e.g., a trademark or the awarding of a contract—but this Court has never accepted such a boundless theory of standing.").

Because Plaintiff has failed to sufficiently allege that Defendant's actions had a determinative or coercive effect on the consumer choices causing its alleged injury, Plaintiff's allegations do not give rise to Article III standing. Plaintiff's complaint, to the extent it is not already barred by the doctrine of res judicata, must therefore be remanded to state court. *See* 28 U.S. Code § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## CONCLUSION

For the reasons set forth above, Plaintiff's First Cause of Action (alleging violation of N.Y. Gen. Bus. Law § 349(h)) and Second Cause of Action (alleging violation of N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7) are partially barred by the doctrine of res judicata to the extent each concerns events that allegedly occurred prior to the filing of the *Mid Island I* complaint on August 31, 2021, and such claims in said action were dismissed with prejudice. Furthermore, to the extent that Plaintiff alleges claims related to conduct post-August 31, 2021, Plaintiff has not sufficiently

11

alleged a traceable injury in fact giving rise to Article III standing. As such, the Court lacks jurisdiction over Plaintiff's claims and therefore does not reach Defendant's other arguments in favor of dismissal.

\* \* \*

Accordingly, Plaintiff's complaint is partially dismissed with respect to challenges relating to events taking place prior to August 31, 2021. Further, to the extent that Plaintiff's First and Second Causes of Action assert claims related to conduct allegedly occurring after August 31, 2021, these remaining claims in this action are remanded to state court.

**SO ORDERED.**

                                              /s/
                                    **ORELIA E. MERCHANT**
                                    **United States District Judge**

Dated: Brooklyn, New York
       November 22, 2023.